IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PAUL ANTHONY CHENEVERT, ) | |
|     Plaintiff, ) | Civil Action No. 7:21-cv-00562 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| B.L. KANODE, Warden, *et al.*, ) |     United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

Paul Anthony Chenevert, a Virginia inmate proceeding *pro se*, brings several claims pursuant to 42 U.S.C. § 1983 against several defendants that arise from his incarceration at River North Correctional Center (River North or RNCC).[1]  Currently before the court is the defendants' motion to dismiss plaintiff's third amended complaint.  (Dkt. No. 64.)  For the reasons stated below, defendants' motion will be granted.

I.  BACKGROUND

**A. Procedural Background**

Plaintiff originally filed this action on October 29, 2021.  (Dkt. No. 1.)  Plaintiff sued 12 defendants, all of whom filed a motion to dismiss.  (Dkt. No. 13.)  In response, plaintiff filed an amended complaint.  (Dkt. No. 21.)  The court then denied the motion to dismiss without prejudice.  (Dkt. No. 23.)  Defendants filed another motion to dismiss (Dkt. No. 25), but plaintiff filed a second amended complaint (Dkt. No. 27).  As a result, the court ordered that the second amended complaint was at that point the operative complaint and dismissed defendants' second motion to dismiss without prejudice.  (Dkt. No. 34.)

---

[1] Plaintiff is currently incarcerated at Wallens Ridge State Prison.

Defendant moved to dismiss the second amended complaint. (Dkt. Nos. 39, 47.) On October 12, 2022, the court issued an order giving plaintiff the choice to either go forward with the second amended complaint or file a third amended complaint. (Dkt. No. 55.) The court made clear that plaintiff was being given "one additional opportunity to amend." (*Id.* at 4.) In allowing plaintiff "one final opportunity to amend," (*id.* at 3), the court emphasized that if plaintiff chose to file another amended complaint,

> [h]is third amended complaint must be a new pleading, complete in all respects, which stands by itself without reference to any earlier-filed complaint, documents, or attachments. It must list his claims separately, clearly state which claims are brought against which defendants, and provide specific facts to support each claim. Chenevert is warned that **no further amendments will be allowed**. This is his final time to amend his complaint in this case.

(*Id.* at 3 (emphasis in original).) Plaintiff chose to file a third amended complaint. (Dkt. No. 60.)

**B.     Plaintiff's Allegations and Claims**

Plaintiff identifies twelve defendants in his third amended complaint:

- B.L. Kanode, Warden at RNCC. He is sued in his individual capacity.
- R. Hickman, Investigator employed at RNCC, sued in her individual capacity.
- Frazier, Investigator employed at RNCC, sued in her individual capacity.
- Sgt. Evans, Officer employed at RNCC. He is sued in his individual capacity.
- Lt. Colna, Officer employed at RNCC. He is sued in his individual capacity.
- Chief Kilbourne, Officer employed at RNCC, sued in his individual capacity.
- Lt. King, Officer employed at RNCC. He is sued in his individual capacity.
- A. White, Assistant Warden at RNCC. He is sued in his individual capacity.
- Harold W. Clarke, employed at the Virginia Department of Corrections (VDOC), sued in his individual and official capacities.

- A. David Robinson, employed at VDOC, sued in his individual and official capacities.

- Joseph W. Walters, employed at VDOC. He is sued in his individual and official capacities.

- H. Scott Richeson, employed at VDOC, sued in his individual and official capacities.

(Third Am. Compl. ¶¶ 3–13.)[2]

Plaintiff alleges that, upon his arrival at River North, he was continuously denied access to the law library. (*See* Third Am. Compl. ¶ 15 ("On the third day of being housed at RNCC. . . , Plaintiff submitted a request to visit the Law Library (LL)."); ¶ 16 ("Plaintiff visited the LL on or about April 26, 2019, the first scheduled date. After only approximately 20–30 minutes, plaintiff was ordered . . . to return to his housing unit. When asked why, Plaintiff was told he was not on the Master Pass sheet (hereinafter MPS)."); ¶ 25 ("Plaintiff attempted for the fifth time to make his scheduled appointment to the LL, and he was denied for the same reason; MPS."); ¶ 37 ("Plaintiff submitted several requests every week during the months of May and June (2019) asking to be rescheduled for the LL. He never received an appointment or a response of any kind.").) Plaintiff alleges to have filed several "requests, complaints, and grievance" over the matter. (*Id.* ¶ 38; *see also id.* ¶ 41.)

Plaintiff also alleges that legal mail and correspondence from his lawyer regarding pending legal matters was wrongfully reviewed, withheld, and/or confiscated. (Third Am. Compl. ¶ 43 ("Once opened, Hickman spent a considerable amount of time reviewing each page in the presence of the Plaintiff. When plaintiff informed the Officer that his legal mail was confidential . . . , Hickman then replied that she was going to confiscate said legal correspondence until she could 'verify the sender.'"); ¶ 50 ("Upon entry he observed that his

---

[2] Plaintiff also sued John Doe, employed as a Watch Commander at RNCC. On January 4, 2023, the court dismissed plaintiff's claims against John Doe (Watch Commander) without prejudice. (Dkt. No. 63.)

legal mail had already been opened, the contents removed.  In attendance was Sgt. Evans, Officer Hickman, and another officer.  Plaintiff questioned why his legal mail had been opened without his presence and tampered with.  Officer Hickman responded simply, "'I'm going to confiscate this.'"); ¶ 56 ("Hickman refused and once again told Plaintiff that the legal mail 'looked suspicious' and they would have to confiscate it until they could confirm it was in fact legal mail.").)  Plaintiff also alleges that he filed grievances regarding these actions.  (*See id.* ¶¶ 45, 46.)

Plaintiff further alleges that he was threatened into withdrawing one of his complaints.  (Third Am. Compl. ¶ 59(b) ("Lt. King is holding plaintiff's grievance which he waived in front of plaintiff's face and tells him that he better withdraw the complaint and never write another one ever again."); ¶ 59(e) ("K9 Handler who then brings the dog toward plaintiff and directs the dog's head toward plaintiff's groin area and the officers threaten they will let the dog chew plaintiff's 'dirty little dick' off.  At this time plaintiff does become scared, terrified in fact, and begs them to just let him return to his cell.  Lt. King then renews his demand that plaintiff withdraw the complaint, and plaintiff complies, and against asks if he can go."); ¶ 62 ("Sgt. Evans approaches several high-ranking gang members in plaintiff's pod and tells them that plaintiff has been filing complaints regarding the gang members controlling the phones (that plaintiff is snitching), and Evans also tells them that plaintiff is a serious repeat sex offender that likes to rape children.  Evans informs the gang members that if they want to 'take care of' plaintiff they can go ahead and do it.  He informs them that he will have plaintiff's cell opened while all the officers happen to be looking the other way.").

Pursuant to these and several more allegations, plaintiff brings the following claims:
- The actions of defendants Hickman and Frazier in reading and confiscating plaintiff's legal correspondence resulted in "denied access to the courts, denial of effective

4

assistance of counsel, violation of privacy, cruel and unusual punishment, denied right to petition for redress of grievance, conspiracy, and theft," in violation of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, 42 U.S.C. § 1985, and state torts. (Third Am. Compl. ¶ 74.)

- The inaction of defendant King to correct the unlawful acts committed by Hickman and Frazier constituted "denied access to the courts, denial of effective assistance of counsel, violation of privacy, cruel and unusual punishment, denied right to petition for redress of grievance, conspiracy, and theft," in violation of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, 42 U.S.C. § 1985, and state torts, and 42 U.S.C. § 1986, neglect to prevent conspiracy. (*Id.* ¶ 75.)

- The actions of King in "withholding and/or preventing delivery of plaintiff's outgoing legal correspondence, and withholding and unlawfully opening and inspecting incoming legal correspondence, in concert with other actors," constituted denied access to the courts, denial of effective assistance of counsel, violation of privacy, cruel and unusual punishment, denied right to petition for redress of grievance, conspiracy, and theft, in violation of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, 42 U.S.C. § 1985, and state torts. (*Id.* ¶ 76.)

- The actions of defendants Evans, Colna, and King "using an institutional canine to threaten bodily harm towards plaintiff in an attempt to prevent him from exercising his constitutionally protected rights, and to create an environment of mental anguish, terror, and perpetual duress," caused cruel and unusual punishment in violation of the Eighth Amendment, and violation of due process in violation of the Fifth and Fourteenth Amendments. (*Id.* ¶ 78.)

- The actions of Evans "in attempting to create an unsafe and threatening environment for plaintiff by recruiting known gang members to inflict bodily harm upon his person as a result of Evans' personal dislike and deliberate indifference to plaintiff's rights, health and wellbeing" was cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* ¶ 79.)

- The failure of defendants Kanode, White, and Kilbourne "to take action to prevent the continued violation of plaintiff's constitutional rights of access to legal services, access to the court, and access to effective assistance of counsel" violates 42 U.S.C. §§ 1985, 1986, First, Fifth, Sixth, and Fourteenth Amendments. (*Id.* ¶ 80.)

- The Virginia Department of Corrections' failure to "prevent the known pattern of atrocious civil rights violations being imposed upon plaintiff by defendants employed by RNCC" resulted in denied access to the courts, denial of effective assistance of counsel, violation of privacy, cruel and unusual punishment, denied right to petition for redress of grievances, conspiracy, and theft, in violation of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, 42 U.S.C. §§ 1985, 1986, and state torts. (*Id.* ¶ 81.)

5

Plaintiff seeks declaratory relief, injunctive relief, and several thousands of dollars in compensatory and punitive damages. (*See* Third Am. Compl. at pp. 12–14.)[3]

## II. ANALYSIS

### A. Standard of Review

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When analyzing such a motion, the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In addition, any pleading must comply with Rule 8's directive that the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 8(a), a pleading must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

*Pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pled." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *See Manigault v. Capital One, N.A.*, CIVIL NO. JKB-23-223, 2023

---

[3] The court also notes the table of the causes of action provided by defendants. (Dkt. No. 65-1.)

WL 3932319, at *2 (D. Md. June 8, 2023). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

**B. Rule 8 and the Court's October 12, 2022 Order**

As noted, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed R. Civ. P. 8(a)(2), and in addition, that each allegation be "simple, concise, and direct," Fed. R. Civ. P. 8(d)(1). In the context of *pro se* pleadings, the court "is not required to act as an advocate for a *pro se* litigant, nor to 'sift through' pleadings in an attempt to construct legal arguments or theories for him." *Harvey v. Hobbs*, 1:20cv605 (TSE/TCB), 2022 WL 980846, at *4 n.8 (E.D. Va. Mar. 29, 2022). Further, the court specifically warned plaintiff that he "must *list his claims separately, clearly state which claims are brought against which defendants*, and *provide specific facts to support each claim*." (Dkt. No. 55 at 3 (emphasis added).)

Defendants argue that plaintiff's third amended complaint does not comply with Rule 8 or the court's October 2022 order. The court agrees, and as a result, defendants have not been given fair notice of the claims against them. Instead of listing his claims separately, plaintiff's "claims for relief" each list multiple causes of action. For example, the complaint alleges that the actions of Frazier in reading and confiscating plaintiff's legal correspondence resulted in "denied access to the courts, denial of effective assistance of counsel, violation of privacy, cruel and unusual punishment, denied right to petition for redress of grievance, conspiracy, and theft," in violation of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, 42 U.S.C. § 1985, and state torts, Third Am. Compl. ¶ 74, and that the actions of King in "withholding and/or

7

preventing delivery of plaintiff's outgoing legal correspondence, and withholding and unlawfully opening and inspecting incoming legal correspondence, in concert with other actors," constituted denied access to the courts, denial of effective assistance of counsel, violation of privacy, cruel and unusual punishment, denied right to petition for redress of grievance, conspiracy, and theft, in violation of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, 42 U.S.C. § 1985, and state torts, Third Am. Compl. ¶ 76. Thus, in responding to or addressing plaintiff's allegations, defendants have been forced to sift through the allegations and determine which facts might underlie several different legal theories. This is the antithesis of a "short and plain statement" pursuant to Rule 8. *See Wootten v. Virginia*, Civil Action No. 6:14-cv-00013, 2015 WL 1345276, at *1 n.1 (W.D. Va. Mar. 23, 2015) (noting that a voluminous, repetitive, and conclusory complaint is subject to dismissal pursuant to Rule 8 because it "places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be" and "imposes a similar burden on the court to sort out the facts now hidden in a mass of charges, arguments, generalizations and rumors"); *Gurman v. Metro Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) (explaining that when a plaintiff alleges "every conceivable claim against every conceivable defendant" he unfairly "shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support").

  Plaintiff attributes the issues with his pleading to having limited or sporadic access to the law library at his prison. (Dkt. No. 69 at 1.) The issue with plaintiff's complaint is not the lack of legal citation, but the lack of facts to support his claim and the scattershot presentation of his legal theories.

Even if plaintiff's third amended complaint complied with Rule 8, it would be subject to dismissal for the following reasons.

### C. First Amendment—Access to Courts

Prisoners have a constitutional right to meaningful and effective access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350–51 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, there is no "abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351. Prison law libraries and legal assistance programs "are not ends in themselves, but only the means for ensuring a 'reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* (quoting *Bounds*, 430 U.S. at 825). "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original).

Ultimately, the right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The plaintiff "must identify a 'nonfrivolous,' 'arguable' underlying claim," and it "follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* (citing *Lewis*, 518 U.S. at 353). Thus, the complaint must identify (1) the underlying nonfrivolous and arguable legal claim, (2) the remedy sought through that underlying claim, and (3) the loss of the underlying claim resulting from the defendant's alleged interference with his right of access. *Id.* at 415–16; *see also Michau v. Charleston Cty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006) (rejecting denial of access claim where

complaint did "not specifically explain how [plaintiff] was injured by any limitations on his access to the law library"); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (recognizing that plaintiff bringing denial of access to courts claim must allege claim with specificity and identify an actual injury resulting from official conduct).

Plaintiff's allegations describe in detail how defendants prevented or interfered with his access to the law library and his legal mail. He does not, however, allege any facts demonstrating that his underlying claims were nonfrivolous.

As an initial matter, plaintiff appears to reference the direct appeal of his conviction, alleging that he needed to visit the law library because he was "attempting to file his appeal to his conviction." (Third Am. Compl. ¶ 34.) However, plaintiff was not prevented from appealing to the Court of Appeals of Virginia. *See Chenevert v. Commonwealth*, 840 S.E.2d 590 (Va. Ct. App. 2020).[4] Therefore, plaintiff cannot state a claim for the denial of his right to access the courts based on the appeal of his criminal conviction.

Plaintiff also references a state habeas petition (Third Am. Compl. ¶¶ 34, 42, 54, 65), a federal habeas petition (*id.* 67), and a petition for certiorari to the United States Supreme Court (*id.* 53, 66). With respect to habeas review, plaintiff alleges that he "planned on raising arguments based upon alleged violations of constitutionally protected rights, specifically, ineffective assistance of counsel, speedy trial issues, and others." (*Id.* ¶ 54.) Plaintiff further explains that during his criminal trial, he "alleged several procedural errors occurred as well as violations of plaintiff's eighth amendment right to proportional sentencing, i.e., unlawful admittance of evidence, among others." (*Id.* ¶ 53(a).) He does not, however, allege any facts demonstrating that these legal arguments are arguable or nonfrivolous.

---

[4] The court may take judicial notice of this public record without converting this motion into one for summary judgment. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

10

Moreover, plaintiff's denial of access claims based on the appeal of his conviction and pursuit of habeas relief, if successful, "would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). They must also be dismissed as barred by the rule set forth in *Heck*. To bring a such a claim for damages pursuant to § 1983, plaintiff would have to "prove that the conviction and sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87. Plaintiff cannot make this showing.

Finally, plaintiff alleges that he was prevented from bringing the claims he asserts in this case. (Third Am. Compl. ¶ 53(b).) Plaintiff, of course, ultimately was able to bring these claims, so he was not denied access to court. Plaintiff cannot logically base a denial-of-access claim on an identical underlying claim. This would make the denial of access an actionable injury, but there is "no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Christopher*, 536 U.S. at 415.

For these reasons, plaintiff's access to courts claim will be dismissed.

### D. First Amendment—Petition the Government

The First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const., Amdt. 1. This right is "generally concerned with expression directed to the government seeking redress of a grievance." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). However, an incarcerated person has "no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). An incarcerated person "cannot bring a [42 U.S.C.] §

11

1983 claim alleging denial of a specific grievance process." *Id.* Therefore, to the extent plaintiff alleges a First Amendment violation based on a denial of access to VDOC's grievance procedure, any such claims will be dismissed.

### E. Fourth Amendment—Prison Legal Mail

The First and Fourteenth Amendments, not the Fourth Amendment, protect against the reading and confiscation of legal mail by prison officials. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (explaining that the Fourth Amendment's proscription against unreasonable searches and seizures "does not apply within the confines of the prison cell"); *Bray v. Mazza*, No. 4:21cvP119-JHM, 2022 WL 291720, at *4 (W.D. Ky. Jan. 31, 2022) (dismissing Fourth Amendment claim because First and Fourteenth Amendments protect against an unreasonable search and seizure resulting in reading and confiscation of legal mail by prison officials); *Villafana v. Clarke*, No. 3:17cv512, 2018 WL 1569489, at *4 (E.D. Va. Mar. 30, 2018) (prisoner's Fourth Amendment rights are not violated when mail is inspected and opened by prison officials); *Haze v. Harrison*, 961 F.3d 654, 661 (4th Cir. 2020) (affirming decision that defendants were entitled to qualified immunity because "neither party identifies a single case, in any Circuit, where interference with an incarcerated person's legal mail was held to be violative of the Fourth Amendment").

Therefore, to the extent that plaintiff is alleging that defendants' confiscation of his legal mail is a Fourth Amendment violation, any such claims will be dismissed.

### F. Fifth Amendment—Right to Counsel, Due Process

The Fifth Amendment provides, among other things, that no one "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This is known as the privilege against self-incrimination, which is "safeguarded in part by the familiar prophylactic

warnings given to arrestees that, for example, they have the right to remain silent and the right to the presence of an attorney—the latter at public expense, if necessary." *United States v. Holness*, 706 F.3d 579, 593 (4th Cir. 2013) (citing *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966)). Thus, while "the text of the Amendment does not specifically confer any entitlement to legal representation in criminal cases, the Supreme Court, through its implementing decisions, has 'declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation.'" *Id.* (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). The Fifth Amendment right to counsel, unlike the Sixth Amendment right, may arise before the commencement of formal criminal proceedings, for example, "whenever a suspect is taken into custody and questioned." *Id.*

Plaintiff has not alleged that he was subjected to a custodial interrogation, much less that he was deprived of a right to counsel during such an interrogation. Therefore, the third amended complaint fails to state a claim for the denial of plaintiff's right to counsel under the Fifth Amendment.

Furthermore, due process claims by a state prisoner fall under the Fourteenth Amendment, not the Fifth Amendment. "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Because the defendants are not employees of the federal government, plaintiff cannot state a claim against them under the Fifth Amendment.

## G. Sixth Amendment Right to Counsel

The Sixth Amendment states, in part, that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI.

13

"Inspecting an inmate's legal mail may implicate the Sixth Amendment right to communicate freely with his attorney in a criminal case." *Altizer v. Deeds*, 191 F.3d 540, 549 n.14 (4th Cir. 1999) (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)). However, the Sixth Amendment right to counsel "extends to the first appeal of right, and no further." *Pa. v. Finley*, 481 U.S. 551, 555 (1987). There is no "constitutional right to pursue discretionary state appeals or applications for review in the Supreme Court." *Folkes v. Nelsen*, 34 F.4th 258, 273 (4th Cir. 2022) (quoting *Wainright v. Torna*, 455 U.S. 586, 587 (1982)). Further, "it is well settled that some showing of prejudice is a necessary element of a Sixth Amendment claim based on an invasion of the attorney-client relationship." *United States v. Chavez*, 902 F.2d 259, 266 (4th Cir. 1990) (citing *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)).

Plaintiff alleges that he was receiving communications from an attorney that his mother had obtained for his pending appeal and habeas corpus, and to assist him in preparing a civil complaint against RNCC for denying him access to the law library. (Third Am. Compl. ¶ 42.) The Sixth Amendment is not applicable to any communications relating to collateral relief or to civil litigation. For the direct appeal of his criminal conviction, plaintiff was represented by Erik A. Mussoni, an Assistant Public Defender, not a separate attorney found by plaintiff's mother. *Chenevert v. Commonwealth*, 840 S.E.2d 590 (Va. Ct. App. 2020). Even if there was some sort of interference with plaintiff's direct appeal, plaintiff has not plausibly alleged any prejudice resulting therefrom.

For these reasons, the third amended complaint fails to state a claim that defendants violated plaintiff's rights under the Sixth Amendment.

**H. Eighth Amendment**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. Amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Supreme Court has construed this clause to require prison officials to "provide humane conditions of confinement." *Farmer v. Brennen*, 511 U.S. 825, 832 (1994). Therefore, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take 'reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison official acted with a sufficiently culpable state of mind. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 1993).

Plaintiff alleges that the confiscation and inspection of his incoming and outgoing legal mail constitutes an Eighth Amendment violation. (Third Am. Compl. ¶¶ 74–76.) These alleged actions cannot form the basis of a successful Eighth Amendment claim. Plaintiff also alleges that being threatened with a canine and the recruitment of gang members to harm him violates the Eighth Amendment. (*Id.* ¶¶ 78–79; *see also id.* ¶ 59(d) ("The officers share a laugh and tell plaintiff he's never getting out."); ¶ 63 ("Plaintiff was approached by these gang members and questioned at length, and his well-being was threatened. Plaintiff was able to instantly remedy the matter diplomatically but lived in constant fear of his safety and even his life thereafter.")). Plaintiff does not allege that he was physically harmed by the defendants, the canine, or by any fellow inmates. It is well-established that threats and verbal taunts, without more, do not violate the prohibition against cruel and unusual punishments. *See Wilson v. United States*, 332 F.R.D.

15

505, 520 (S.D.W. Va. 2019) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.") (collecting cases).

Plaintiff does allege that Lt. Colna grabbed him "by his shirtfront and roughly shoved him against the wall and warned him that 'he better do as he's told or he will get messed up.'" (Third Am. Compl. ¶ 59(a).) This allegation, standing alone, is insufficient to plausibly allege an Eighth Amendment violation based on excessive force. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010). Thus, "an inmate who complains of a 'push or shove' that causes no discernable injury almost certainly fails to state a valid excessive force claim." *Id.* at 38. In any event, plaintiff's claims are focused on the threats with the institutional canine and from gang members, which for the reasons stated above, are not actionable Eighth Amendment claims.

For these reasons, plaintiff has not stated a plausible Eighth Amendment claim.

## I. Fourteenth Amendment

Plaintiff also alleges that the denial of his access to the courts violates the Due Process Clause of the Fourteenth Amendment. The Supreme Court has indicated that the right of access to the courts sounds in both the First Amendment and in due process. *See Giarratano v. Johnson*, 456 F. Supp. 2d 747, 752 n.4 (W.D. Va. 2006) (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983); *Wolff*, 418 U.S. at 579). This claim is subject to dismissal for the same reasons as plaintiff's First Amendment access to courts claim. *See, e.g.*, *Redmon v. Zavaras*, Civil Action No. 09-cv-02133-WJM-CBS, 2011 WL 2728466, at *5 n.2 (D. Colo. June 16, 2011) ("As Mr. Redmon's due process claim is based on the same allegations that give rise to his claims for denial of access to the courts, the underlying allegations are properly analyzed

16

under the relevant standards for a First Amendment claim, rather than standards that govern a claim for substantive or procedural due process.").

**J. 42 U.S.C. § 1985**

A victim of a conspiracy to interfere with his civil rights has a civil remedy under 42 U.S.C. § 1985. This statute "proscribes conspiracies that interfere with (a) the performance of official duties by federal officers; (b) the administration of justice in federal courts; (c) the administration of justice in state courts; (d) the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws'; and (e) the right to support candidates in federal elections." *Kush v. Rutledge*, 460 U.S. 719, 724 (1983).

To state a claim for a § 1985 conspiracy, a plaintiff must show: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. *A Soc'y Without a Name v. Va.*, 655 F.3d 342, 346 (4th Cir. 2011). "The law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.*

Plaintiff has not alleged that he belongs to a protected class or that defendants were motivated by a class-based animus. "The 'equal protection' language included in the second clause of section 1985(2) requires an allegation of class-based animus for the statement of a claim." *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1292 (4th Cir. 2002). Plaintiff

17

alleges that Sgt. Evans "taunt[ed] him by saying something to the effect of 'What's wrong tough guy, try to touch us like you did that little girl,'" (Third Am. Compl. ¶ 59(f)), suggesting that defendants discriminated against plaintiff based on his status as a sex offender. Sex offenders, however, are not considered a protected class for equal protection purposes. *See Slonaker v. Jividin*, No. 2:21-00036, 2022 WL 509612, at *5 (S.D.W. Va. Jan. 19, 2022) ("To the extent that the Complaint asserts that sex offenders are a suspect or quasi-suspect class, neither the United States Supreme Court, nor the Fourth Circuit, has directly addressed this issue. However, all other federal Circuit Courts that have addressed this issue have found that they are not.").

Plaintiff has also failed to plead the existence of a conspiracy. To establish a conspiracy for purposes of § 1985, a plaintiff must show "that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences." *Simmons*, 47 F.3d at 1378. Plaintiff has not alleged facts from which a single plan could be inferred, or that the defendants communicated regarding any plan to discriminate against plaintiff based on his being convicted of sexual offenses involving a minor.

For these reasons, plaintiff's § 1985 conspiracy claim will be dismissed.

## K. 42 U.S.C. § 1986

42 U.S.C. § 1986 provides a cause of action against persons who fail to prevent a conspiracy under § 1985. "A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985." *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985). Because the court has found that plaintiff did not plausibly allege a § 1985 claim, plaintiff also has not plausibly alleged a § 1986 claim. Therefore, this claim will be dismissed.[5]

---

[5] Defendants also argue that the third amended complaint fails to state an official-capacity claim against certain defendants; the third amended complaint does not allege personal involvement sufficient to state a claim against certain defendants; and that the individual-capacity claims for injunctive relief should be dismissed. (Dkt.

**L. State Law Claims**

The court has discretion to decline to exercise supplemental jurisdiction over state law claims when "the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3). When deciding whether to exercise this discretion, courts should "consider and weigh . . . the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine . . . will point towards declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7. Because the federal law claims have been resolved before trial and the court has not invested significant resources in analyzing or addressing the state law claims, the court will dismiss the state law claims without prejudice in the interests of judicial economy and comity between federal and state courts.

**M. Dismissal With Prejudice**

A district court's dismissal under Rule 12(b)(6) is with prejudice "unless it specifically orders dismissal without prejudice. That determination is within the district court's discretion." *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985). The court will dismiss plaintiff's federal law claims with prejudice because he was given three chances to amend and failed to state any valid claims. *See Lane v. Davis*, Civil Action No. 0:20-cv-02725-RBH-PJG, 2021 WL 1976403, at *3 n.5 (D.S.C. May 18, 2021) (dismissing with prejudice because "Plaintiff has already had a chance to amend his complaint"). The state law claims, as stated, will be dismissed without prejudice because the court is declining to exercise jurisdiction over them.

---

No. 65 at 19–23.) It is not necessary for the court to address these arguments because plaintiff has failed to state any actionable claims for relief.

## III.  CONCLUSION

For the reasons stated in the foregoing opinion, the court will enter an appropriate order granting defendants' motion to dismiss, dismissing plaintiff's federal law claims with prejudice, dismissing plaintiff's state law claims without prejudice, striking this matter from the active docket of the court, and entering final judgment in favor of defendants.

Entered: September 26, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge